UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x
GASSER CHAIR COMPANY, INC. and
GEORGE GASSER,

                              Plaintiffs,

    -against-

INFANTI CHAIR MANUFACTURING
CORP. and VITTORIO INFANTI,

                              Defendants.
-------------------------------------------------x
                                                                                  MEMORANDUM AND ORDER
GEORGE GASSER and GASSER CHAIR
COMPANY, INC.,
                                                                                    88 CV 3931 (ILG)
                                                                                    03 CV 6413 (ILG)
                              Plaintiffs,

INFANTI INTERNATIONAL, INC., MARK
INFANTI, NANCY APONTE INFANTI,
VITTORIA INFANTI, MARGUERITA
INFANTI, MARIELLA INFANTI, AMBOY
NATIONAL BANK, GEORGE E. SCHARPF
and SANDERS W. GROPPER, in his
capacity as Receiver of Infanti
International, Inc.,

                              Defendants.
-------------------------------------------------x

GLASSER, United States District Judge:

## **INTRODUCTION**

      Plaintiffs Gasser Chair Company, Inc. and George Gasser ("plaintiffs") obtained a judgment in excess of $15 million (the "Judgment") against Infanti Chair Manufacturing Corporation ("Infanti Chair") and Vittorio Infanti ("Mr. Infanti") on August 9, 1996. Despite their persistent efforts, plaintiffs have been unable to satisfy the Judgment. In a

1

related proceeding in which plaintiffs seek to impose liability upon Infanti International, Inc. ("Infanti International" or the "Corporation") as a successor to Infanti Chair, and to hold Infanti International liable on the Judgment, the Court issued a decision, familiarity with which is assumed, granting partial summary judgment to plaintiffs. See Gasser v. Infanti International, Inc., 353 F. Supp. 2d 342 (E.D.N.Y. 2005). In that decision, the Court held that a patent (the "Patent") once owned by Mr. Infanti, which he subsequently conveyed to his daughter, Vittoria Infanti ("Vicky"), is owned by plaintiffs because Mr. Infanti's assignment of the Patent to his daughter, without consideration, constituted a fraudulent conveyance under New York law.[1]

Plaintiffs have filed this supplementary proceeding by order to show cause for, inter alia, the appointment of a receiver to sell the Patent. George E. Scharpf ("Scharpf"), the President of Amboy National Bank ("Amboy"), and a creditor of Infanti International, acting in his individual capacity, opposes plaintiffs' application and asserts that he has a valid security interest in the Patent superior to any claim to it asserted by plaintiffs. In response, plaintiffs argue, among other things, that Scharpf does not have a valid security interest in the Patent.

For the reasons that follow, the Court grants plaintiffs' motion and finds that there is no evidence that Scharpf has a valid security interest in the Patent superior to the plaintiffs' claim to it. Pursuant to N.Y. C.P.L.R. § 5228(a), the Court therefore will appoint a receiver to conduct a sale of the Patent.

---

[1] In that related proceeding, the Court held that plaintiffs are rightful owners of patent number 6,135,562 for a chair with "releasably detachable and interchangeable cushions," which Mr. Infanti invented in September 1999 and which he has called the "Versi-Chair." Id.

2

**BACKGROUND**

The transactions entered into between Scharpf, on the one hand, and Infanti International and Mr. Infanti, on the other hand, determine the Court's resolution of plaintiffs' application. They are as follows. On or about September 10, 2001, and subsequently, on or about October 4, 2001, Scharpf and Infanti International entered into two identical collateral promissory notes in the amount of $500,000 and $135,000, respectively. In order to secure the extension of credit under these notes, Infanti International granted Scharpf a security interest in certain collateral, including the "[a]ssignment of all patents related to Infanti Versi Chairs." On or about July 22, 2002, and subsequently, on or about October 17, 2002, Scharpf and Infanti International entered into two identical collateral promissory notes, each in the amount of $100,000. In order to secure the extension of credit under these notes, Infanti International granted Scharpf a security interest in certain collateral, including "a chair with a releasably detachable and interchangeable seat cushion, and releasably detachable and interchangeable front and rear seat back cushions mounted to injection molded plates." All four of these notes (collectively, the "Notes") were "guaranteed" by Mr. Infanti.[2] They all contained a New Jersey choice of law provision.[3]

---

[2]The Court notes that at the time that Mr. Infanti "guaranteed" the Notes, he was a judgment debtor to plaintiffs in an amount exceeding $15 million.

[3]The Court enforces the New Jersey choice of law provision. "It is the general policy of New York courts to enforce choice of law provisions." See RJE Corp. v. Northville Indus. Corp., 329 F.3d 310, 314 (2d Cir. 2003); see also Hugh O'Kane Elec. Co. v. Mastec N.A., Inc., 2005 WL 526805, at * (1st Dep't Mar. 8, 2005) ("It is the policy of the courts of New York to enforce choice-of-law clauses, provided that the law chosen has a reasonable relationship to the agreement and does not violate a fundamental public policy of New York") (citation omitted); cf. Air Economy Corp. v. Aero-Flow Dynamics, 122 N.J. Super. 456, 457, 300 A.2d 856 (N.J. Super. App. Div. 1973) (while an agreement to be bound by the laws of a designated state cannot divest a state of "judicial jurisdiction," it will be enforced unless it is unfair, unreasonable or against the public policy of the forum state). Scharpf, Infanti International and Mr. Infanti are sophisticated in business and there is no evidence that applying New Jersey law to the Notes is unfair,

3

Scharpf claims that he perfected his security agreement in the Patent by filing a UCC-1 financing statement (the "UCC Financing Statement") in the Richmond County Clerk's office on March 19, 2002 and by recording a security agreement in the United States Patent and Trademark Office (the "PTO Security Agreement") on October 8, 2002. The UCC Financing Statement lists Infanti International and Mr. Infanti as the debtors, and Scharpf as the secured party. The PTO Security Agreement identifies Mr. Infanti and his daughter "Vittoria Infanti Valentine [sic]" as the conveying parties, and Scharpf, as the receiving party. Only the PTO Security Agreement was signed.[4]

## DISCUSSION

### A. Whether Scharpf Has A Valid Security Interest in the Patent

Based on the UCC Financing Statement and PTO Security Agreement, Scharpf asserts that "as the holder of a perfected security interest in the Patent, obtained for fair value," he "has priority over Gasser." (See January 14, 2005 Letter from Scharpf to Court). Scharpf relies on N.Y. C.P.L.R. § 5202(a), which provides that "[w]hen a judgment creditor has delivered an execution to a sheriff," as plaintiffs have done here, "the judgment creditor's rights in a debt owed to the judgment debtor or in an interest of the judgment debtor in personal property, against which debt or property the judgment may be enforced, are superior to the extent of the amount of the execution to the rights of any transferee of the debt or property, <u>except a transferee who acquired the debt or property for fair consideration</u> before it was levied upon." (emphasis added). Scharpf

---

unreasonable or against public policy. Indeed, the Uniform Commercial Code which is relevant to the issues presented by the parties is the same or substantially similar in New Jersey and New York.

[4] It was signed by a lawyer named L. Stephen Pastor.

argues that plaintiffs have never levied on the Patent because the Supreme Court has held that a judgment creditor cannot enforce a judgment against a patent by execution and levy. (Id., citing Stephens v. Cady, 55 U.S. 528 (1852), Stevens v. Gladding, 58 U.S. 447 (1954)). Further, according to Scharpf, even if plaintiffs could and did levy on the Patent, he "acquired his interest in [it] for fair consideration (*i.e.*, the value of all of his loans), before the Patent was levied upon."[5] (Id.)

As a threshold matter, the Court must determine whether Scharpf's contention is correct, namely, that he is a holder of a perfected security interest in the Patent. "Perfection of security interests is determined by state law." In re Investors & Lenders, Ltd., 165 B.R. 389, 393 (Bankr. D. N.J. 1994). Under New Jersey law (and the law of New York), a security interest is enforceable against the debtor "with respect to the collateral only if ... the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party." N.J. Stat. Ann. 12A § 9-203(b). "'Rights in the collateral' merely states a truism, namely, that the debtor can normally only convey what it has." 4 James J. White and Robert S. Summers, Uniform Commercial Code, at 127 (Ch. 31-3) (5th ed. 2002).

The Notes pursuant to which Scharpf obtained a security interest in the Patent were signed between September 10, 2001 and October 17, 2002. However, at that time,

---

[5]There is no dispute that the UCC Financing Statement was sufficient, *i.e.*, that it contained the requisite information to be enforceable. N.J. Stat. Ann. 12A § 9-502(a) provides that a financing statement is "sufficient" only if it: "(1) provides the name of the debtor; (2) provides the name of the secured party or a representative of the secured party; and (3) indicates the collateral covered by the financing statement." The UCC Financing Statement satisfies each element. Previously, in order to perfect a security interest pursuant to the UCC, a creditor was required to file a financing statement signed by the debtor. Therefore, cases such as In re Maple Contractors, Inc., 172 N.J. Super. 348, 350, 411 A.2d 1186, 1187 (Super. Ct. Law Div. 1979), which held that a financing statement was "deficient for lack of the debtor's signature" are no longer good law for this point.

5

neither Infanti International, nor Mr. Infanti, had any interest in the Patent to convey to Scharpf. The undisputed facts reveal that Infanti International never had an interest in the Patent at any time.[6] Mr. Infanti did not have an interest in the Patent because he "testified that he transferred the Patent to his daughter Victoria 'as a gift' at or around the time (September 10, 1999) he filed his patent application with the United States Patent and Trademark Office." Gasser, 353 F. Supp. 2d at 347. Mr. Infanti therefore had no interest in the Patent at the time he guaranteed the Notes.[7]

Vicky did not transfer a security interest in the Patent to Scharpf because there is no enforceable security agreement between them. Vicky did not sign the PTO Security Agreement. This renders the agreement unenforceable as against Vicky. It is well-established that in "order to be enforceable[,] the security agreement must be signed by the debtor." In re Maple Contractors, Inc., 172 N.J. Super. 348, 353, 411 A.2d 1186, 1189 (Super. Ct. Law Div. 1979); see also 12A N.J. Stat. Ann. § 9-203(b)(3)(A) (in order for a security agreement to be enforceable, the debtor must authenticate it and provide a

---

[6] Infanti International, then represented by counsel, submitted a brief in which it reargued its position which the Court previously rejected, namely, that Mr. Infanti was under an obligation to assign the Patent to the Corporation because, while he was an employee, he "created the Patent for International's sole benefit and use." (Infanti International Mem. at 2). Gasser, 353 F. Supp. 2d at 353 ("the documentary and credible testimonial evidence drive the Court to conclude that it was his daughter and not Mr. Infanti who was President of Infanti International when he created his invention or had the Patent for it recorded, and he had no duty, fiduciary or otherwise, to assign his interest in the Patent to the corporation"). Moreover, Infanti International's assertion that it is the rightful owner of the Patent under the work-for-hire doctrine was also rejected as being incompatible with the evidence which the Corporation presented on its partial motion for summary judgment. See Gasser, 353 F. Supp. 2d at 353 ("Defendants have not argued or presented any evidence that Mr. Infanti was an 'employee' between the time Infanti International was founded and when the Patent was recorded with the United States Patent and Trademark Office.").

[7] This is so even though the Court held that Mr. Infanti's transfer of the Patent to his daughter was fraudulent, and therefore the assignment was "void." Gasser, 353 F. Supp. 2d at 356 n. 15 (citing and quoting In re Faraldi, 286 B.R. 498, 503 (Bankr. E.D.N.Y. 2002)). A void contract is an agreement with no legal effect. Restatement (Second) of Contract, § 7, cmt. a.

description of the collateral).

Accordingly, since no one with legal interest in the Patent ever granted Scharpf a security interest in it, he never obtained one. Plaintiffs are thus the only parties with a valid interest in the Patent as creditors of Mr. Infanti. The fact that the PTO Security Agreement was filed with the United States Patent and Trademark Office is of no consequence. See 37 C.F.R. § 3.54 ("The recording of a document ... is not a determination by the Office of the validity of the document or the effect that document has on the title to a ... patent").

Accordingly, the Court finds that Scharpf never received a security interest in the Patent from anyone.

Even assuming that Scharpf had a security interest in the Patent, he failed to perfect it. Scharpf was required to perfect his security interest in the Patent pursuant to Article 9 of the New Jersey Uniform Commercial Code.[8] See, e.g., Lloyds Credit Corp. v. McLain Heller Ins. Co., 262 N.J. Super. 211, 214, 620 A.D.2d 472, 473 (Super. Ct. Law

---

[8] Since the revised Article 9 of the UCC was enacted in 2001, courts have held that Section 261 of the Patent Act does not displace the Uniform Commercial Code in providing a mechanism for perfecting security interests in patents. See Moldo v. Matsco, Inc. (In re Cybernetic Servs., Inc.), 252 F.3d 1039, 1045-49 (9th Cir. 2001) (holding that a security interest in a patent should be perfected in accordance with state law, not by filing record in Patent and Trademark Office, because the Patent Act addresses filings only with respect to transfers in ownership but not with regard to security interests), cert. denied, 534 U.S. 1130 (2002); In re Tower Tech, Inc., 67 Fed. Appx. 521, 524 (10th Cir. 2003) (same) (citing Moldo) (unpublished opinion); see generally 35 U.S.C. § 261 ("An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage"). Prior to the revisions to Article 9, courts were divided on this issue. Compare In re Transportation Design and Technology, Inc., 48 B.R. 635, 639 (Bankr. S.D. Cal. 1985) and Holt v. United States, 13 U.C.C. Rep. Serv. 336, 337 (D.D.C. 1973) (holding that 35 U.S.C. § 261 is inapplicable to the perfection of security interests) with In re Peregrine Entertainment, Ltd., 116 B.R. 194, 203-04 (Bankr. C.D. Cal. 1990) (rejecting Transportation Design and concluding that federal filing requirements for copyrights is an adequate filing system that entirely pre-empts UCC filing).

Div. 1992) ("The Uniform Commercial Code, as adopted in New Jersey, provides that a security interest in general intangibles may only be perfected by filing"); N.J. Stat. Ann. 12A § 9-301 (comment) ("the law governing perfection of security interests in both tangible and intangible collateral . . . is the law of the jurisdiction of the debtor's location, as determined under section 9-307"). Under the UCC, Scharpf was obligated to perfect his security interest in the Patent by filing a UCC-1 financing statement in the office of the New Jersey Secretary of State, Division of Commercial Recording, because Mr. Infanti resides in New Jersey. See N.J. Stat. Ann. 12A § 9-307(b)(1) ("Except as otherwise provided in this section, the following rules determine a debtor's location.... A debtor who is an individual is located at the individual's principal residence."); N.J. Stat. Ann. 12A § 9-310(a) (generally, "a financing statement must be filed to perfect all security interests"); N.J. Stat. Ann. 12A § 9-501(a)(2) (the office in which to file a financing statement to perfect a security interest is "the Division of Commercial Recording"); In re Wholesale Warehouse, Inc., 141 B.R. 59, 63 (Bankr. D. N.J. 1992) ("A security interest in general intangibles is perfected by filing a financing statement with the Secretary of State"). His failure to do so means that he never perfected his security interest in the Patent to the extent that he ever had one.[9]

B. **The Disposition of the Patent**

Plaintiffs ask that the Court sell the Patent on their behalf to satisfy some or all of the Judgment. Fed. R. Civ. P. 69(a) provides that "[p]rocess to enforce a judgment for the payment of money shall be a writ of execution, unless the court orders otherwise."

---

[9]Because both Infanti International and Vicky Infanti reside in New York, Scharpf was obligated to file a UCC-1 financing statement with the New York Department of State to perfect his interest in the Patent against them. Scharpf has presented no evidence that he did so.

N.Y. C.P.L.R. § 5225(a) states, in relevant part, "[u]pon motion of the judgment creditor, upon notice to the judgment debtor, where it is shown that the judgment debtor is in possession or custody of ... personal property in which he has an interest, the court shall order that the judgment debtor ... deliver any ... personal property ... to a designated sheriff." Courts have sanctioned the use of N.Y. C.P.L.R. §5225 for a judgment debtor's "intangible" property interest. See, e.g., Udel v. Udel, 82 Misc.2d 882, 884, 370 N.Y.S. 2d 426, 428 (Civ. Ct. New York Co. 1975) (even where Business Corporation Law restricts transfer of stock in a professional corporation, it does not preclude the court from directing a turnover of stock to satisfy a judgment under the predecessor to N.Y. C.P.L.R. § 5225). Here, the prerequisites for the grant of a turn-over order have been satisfied because: (a) the Court previously held that Mr. Infanti owns the Patent based on the finding that the conveyance of his interest in it to his daughter, Vicky, was fraudulent, see Gasser, 353 F. Supp. 2d at 355 ;[10] (b) the Judgment has not been satisfied; (c) Mr. Infanti has no money to satisfy the Judgment; and (d) adequate notice was given to Mr. Infanti regarding this application.[11]

Typically, after the judgment debtor turns over property to the sheriff pursuant to court order issued under N.Y. C.P.L.R. § 5225, the sale of that property proceeds

---

[10] Cf. 11 Weinstein, Korn & Miller, New York Civil Practice, ¶ 5225.09, at 52-379 (2004) ("It is not necessary that the judgment debtor have legal title to the property; a beneficial interest is sufficient").

[11] The fact that the order to show cause permitted plaintiffs to serve it and the pleadings supporting it by regular mail and not certified or registered mail, return receipt requested (as required in the rule), is no bar to the grant of the relief because Mr. Infanti is a named defendant in the case, who along with his then lawyer, was served with a copy of the order to show cause and the underlying papers. Cf. Bergdorf Goodman, Inc. v. Marine Midland Bank, 97 Misc.2d 311, 312-13, 411 N.Y.S.2d 490, 491 (Civ. Ct. New York Co. 1978) (notice of proceeding under N.Y. C.P.L.R. § 5225 served by regular mail, and thus court dismissed petition since due process requires a manner of service "reasonably calculated to give the judgment debtor notice of the proceeding and an opportunity to intervene").

according to the requirements of N.Y. C.P.L.R. § 5233 (requiring public notice of sale at auction). However, in this case, because of the lack of marketability of the Patent and the difficulty in determining its true value, the Court finds that it is unlikely that a turn over of the Patent to the sheriff would result in satisfaction of some or all of the Judgment. Udel, 82 Misc.2d at 884, 370 N.Y.S.2d at 426. As one leading commentator states, pursuant to N.Y. C.P.L.R. § 5228, the Court should, in its discretion, "appoint a receiver when disposition of the debtor's property by private negotiation is preferable to an execution sale."[12] 11 Weinstein, Korn & Miller, New York Civil Practice, ¶ 5228.05, at 52-499 (2004). A receivership has been held especially appropriate when the "property interest involved is intangible, lacks a ready market, and presents nothing that a sheriff can work with at an auction, for example, the interest of a psychiatrist/judgment debtor in a professional corporation of which he is a member." David Siegel, New York Practice, § 512 (2004) (citing Udel, supra). The Court therefore orders the appointment of a receiver under N.Y. C.P.L.R. § 5228 for the purpose of selling the Patent and distributing the proceeds of the sale to plaintiffs to satisfy all or part of the Judgment. Further, pursuant to N.Y. C.P.L.R. § 5234(c),[13] the Court holds, to the extent applicable, that Plaintiffs' priority interest in the Patent will not expire within sixty days after an appropriate order is entered by the Clerk of Court.

---

[12] N.Y. C.P.L.R. § 5228(a) provides in relevant part that upon "motion of a judgment creditor … the court may appoint a receiver who may be authorized to … sell any real or personal property in which the judgment debtor has an interest or to do any other acts designated to satisfy the judgment." The Court shall specify the contours of the receiver's obligations and rights in its order. Id.

[13] "Where delivery … to the … receiver … is not completed within sixty days after an order is filed, the judgment creditor who secured the order is divested of priority, unless otherwise specified in the order." N.Y. C.P.L.R. § 5234(c) (emphasis added).

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for appointment of a receiver is granted. Within five business days following entry of this Memorandum and Order, plaintiffs' counsel shall provide the Court with the names, addresses and telephone numbers of three individuals who could serve as receivers for the purpose of selling the Patent, along with a proposed order for the appointment of the Receiver.

SO ORDERED.

Dated:    February 8, 2006
         Brooklyn, New York

_____
I. Leo Glasser
United States District Judge

Copies of the foregoing were sent on this day to:

Alex Spizz
Todtman, Nachamie, Spizz & Johns, P.C.
425 Park Avenue
New York, New York 10022
Attorneys for Plaintiffs

Helen A. Nau
Pitney Hardin LLP
P.O. Box 1945
Morristown, New Jersey 07962-1945
Attorneys for defendant Amboy National Bank

Stan L. Goldberg
Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP
1065 Avenue of the Americas, 18th Floor
New York, New York 10018
Attorneys for Receiver, Sanders W. Gropper

George E. Scharpf
c/o Amboy National Bank
3590 U.S. Highway 9
Old Bridge, New Jersey 08857
*Pro Se*